RANDY LEE HOFFA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hoffa v. Commissioner
Docket No. 17128-83.
United States Tax Court
T.C. Memo 1985-437; 1985 Tax Ct. Memo LEXIS 196; 50 T.C.M. (CCH) 869; T.C.M. (RIA) 85437; August 20, 1985. Randy Lee Hoffa, pro se. Jack Forsberg, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated March 25, 1983, respondent determined deficiencies in petitioner's Federal income tax liabilities and additions to tax as follows: Addition to Tax
Year
Deficiency
Section 6653(a) [1]
1979
$1,717.42
$85.87
1980
2,097.90
104.90
1981
1,356.98
67.85
The issues for decision are (1) whether *198 the assessment of a deficiency with respect to petitioner's 1979 taxable year is barred by the statute of limitations; (2) whether petitioner received self-employment income during the years at issue from C-in-C Soft Metal Casting subject to the tax imposed by sections 1401 and 1402; (3) whether income and losses from more than one trade or business must be aggregated for purposes of determining petitioner's net income from self-employment for each taxable year, and (4) whether petitioner is liable for the additions to tax under section 6653(a). FINDINGS OF FACTS This case was submitted fully stipulated under Rule 122. The stipulations of fact are incorporated herein by this reference. Petitioner, Randy Lee Hoffa, resided in Fridley, Minnesota, at the time his petition was filed. Petitioner and his wife, Charlotte R. Hoffa (hereinafter referred to as "Charlotte"), timely filed joint Federal income tax returns for 1979, 1980 and 1981. Petitioner's 1979 Federal income tax return was dated January 31, 1980. C-in-C Soft Metal Casting (hereinafter referred to as "C-in-C") manufactures and markets lead-tin military miniatures. The miniatures are highly detailed and accurate small-scale *199 (1/285 or 1/2400 scale) replicas of military hardware, aircraft and warships which are purchased primarily by war-gamers and collectors. C-in-C is a partnership in which petitioner has a 60-percent interest. Petitioner's father holds the remaining 40-percent interest. Petitioner's distributive share of the taxable income of C-in-C for 1979 through 1981 was as follows: Distributive Share of
Year
Partnership Income
1979
14,336.11
1980
22,462.59
1981
3,723.16
Many of the miniatures produced by C-in-C during the years 1979 through 1981 were designed by petitioner. Petitioner began designing miniatures for C-in-C in mid-1972. C-in-C began marketing miniatures in 1973. During the years at issue C-in-C offered a selection of between 300 and 400 miniatures, some 125 to 150 of them designed by petitioner. At that time C-in-C also produced miniatures created by four other designers. The lead-tin miniatures sold by C-in-C are cast in vulcanized rubber molds which are produced, through a series of steps, from a plastic model created by a designer. A single plastic model may require the fabrication and assembly of several hundred pieces. Because of the models' *200 very small scale, the work is done under a microscope. Among the models produced and sold by C-in-C is a 1/285 scale replica of the Sergeant York Anti-aircraft tank, designed by petitioner. Petitioner spent approximately 200 hours researching, designing and constructing the plastic model for the Sergeant York miniature, which is less than an inch long. C-in-C's lead-tin miniature of the Sergeant York currently retails for $1.25. In 1980 petitioner spent an average of 35 hours per week in the production of miniatures for C-in-C and an average of 10 hours per week designing miniatures. Pursuant to agreements in effect during 1979 through 1981, C-in-C agreed to pay petitioner royalties for the use of his designs. Royalties were to be a minimum of 10 percent of the retail value of the monthly sales by C-in-C of miniatures designed by petitioner. The parties have stipulated that during the years in issue petitioner actually received royalties from C-in-C equal to 20 percent of the monthly sales of miniatures of his design. The parties agre that petitioner received royalties from C-in-C in the following amounts: Year
Royalties
1979
$11,529.35
1980
12,744.65
1981
11,690.65
*201 During the years 1979 through 1980 petitioner also, individually and independently of C-in-C, produced and marketed two board war games and designed and produced lead-tin miniature space vehicles. The parties have stipulated to the net losses from those activities as reported on Schedule C of petitioner's Federal income tax returns for the years at issue. Aside from small amounts of interest income and wages earned by Charlotte, the only income reported on petitioner's joint Federal income tax returns for each of the years 1979 through 1981 was petitioner's distributive share of partnership income any royalties he received from C-in-C. Petitioner reported no self-employment income or self-employment tax liability on his 1979, 1980, and 1981 Federal income tax returns. OPINION The first issue for consideration is whether the statutory notice of deficiency was issued within the limitation period prescribed by section 6501(a) insofar as it relates to the year 1979. Section 6501(a) states that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * *." Section 6501(b)(1) provides that "a return of tax imposed by this title *202 * * * filed before the last day prescribed by law * * * shall be considered as filed on such last day." The last day for filing the Federal income tax return of a calendar year taxpayer, including a return of self-employment tax liability, is April 15th of the year following the close of the calendar year for which the return is made. Sec. 6072(a). Petitioner filed his 1979 joint Federal income tax return on or about January 31, 1980. [2] However, for purposes of determining the three-year limitation period for assessment of tax, petitioner is deemed to have filed his return on April 15, 1980. Consequently, respondent's notice of deficiency issued March 25, 1983, was timely as to the year 1979. The primary issue for consideration is whether the distributive share of partnership income and royalties received by petitioner from C-in-C during the years 1979 through 1981 constitute self-employment income subject *203 to the tax imposed under sections 1401 and 1402. Section 1401 imposes a tax on the self-employment income of every individual. With certain exceptions not applicable here, self-employment income is defined in section 1402(a) as net earnings from self-employment, including gross income derived by an individual from a trade or business less appropriate deductions, and any distributive share of income or loss from a trade or business carried on by a partnership of which the individual is a member. Generally, the term "trade or business," when used with reference to self-employment income, has the same meaning as it does in section 162. Sec. 1402(c). Aside from a general contention that the self-employment tax is unconstitutional, petitioner has not argued that the partnership income he received from C-in-C in each of the years at issue was not subject to the self-employment tax. Since it is well settled that the self-employment tax is constitutional, Helvering v. Davis,301 U.S. 619 (1937); Reading v. Commissioner,614 F.2d 159, 160 (8th Cir. 1980); Cain v. United States,211 F.2d 375 (5th Cir. 1954), we find that petitioner is *204 liable for such tax on his distributive shares of partnership income earned by C-in-C in the years 1979 through 1981. See also Ellsasser v. Commissioner,61 T.C. 241, 245 (1973). Petitioner argues that royalties received by him from C-in-C are not self-employment income. Petitioner maintains that he was not in the trade or business of designing military miniatures, and that the royalties therefore do not represent self-employment income. Respondent contends that petitioner's design activities were substantial, regular and continuous, and engaged in for profit. Therefore, respondent argues, petitioner was in the trade or business of designing military miniatures, and royalties paid for the use of petitioner's designs constitute self-employment income. The determination of whether a taxpayer's activities constitute a trade or business is based upon a consideration of all the facts and circumstances of a particular case. Hornaday v. Commissioner,81 T.C. 830, 837 (1983); Ditunno v. Commissioner,80 T.C. 362, 371 (1983). Petitioner began creating miniatures for C-in-C in 1972; by 1981 C-in-C was producing some 150 miniatures *205 designed by petitioner. During the years at issue C-in-C added to its offerings between 20 and 25 miniatures designed by petitioner. Petitioner apparently spent many hours researching and constructing the models for each of those designs. The record is unclear as to the number of hours per week petitioner devoted to designing miniatures in 1979 and 1981, but the parties agree that he spent an average of 10 hours per week in such activities in 1980. Finally, petitioner received approximately $12,000 in royalties from C-in-C for the use of his designs in each of the years 1979 through 1981, amounts which represent a substantial portion of the total income reported by petitioner and Charlotte in those years. Based on the above facts, we agree with respondent that petitioner was in the trade or business of designing military miniatures, and royalties received by him for the use of those designs during 1979, 1980, and 1981 constitute self-employment income. [3]
We turn now to the third issue, whether petitioner's losses from individually marketing and producing board war games and space vehicle miniatures must *206 be aggregated with income received from C-in-C for purposes of determining petitioner's net earnings from self-employment for each of the taxable years at issue. Petitioner does not dispute that he was self-employed in the business of producing board games and miniature space vehicles, but--although it operates in his favor--petitioner objects to combining the losses from those endeavors with his income from C-in-C for purposes of calculating his self-employment tax liability. Where an individual is engaged in more than one trade or business, his net earnings from self-employment consist of the aggregate of his net income and losses from all such businesses carried on by him. Sec. 1.1402(a)-2(c), Income Tax Regs. We hold that petitioner was engaged in more than one business in the years 1979 through 1981. Losses from his individual board game and space vehicle business must be combined with his income from C-in-C to determine his net self-employment earnings in each of the taxable years at issue. The final issue is whether petitioner is liable for the additions to tax under 6653(a). The addition to tax under section 6653(a) applies if any part of the underpayment of tax is *207 found to be "due to negligence or intentional disregard of rules and regulations." Petitioner had the burden of proof with respect to this issue. Enoch v. Commissioner,57 T.C. 781, 803 (1972). Petitioner failed to report substantial self-employment tax liabilities arising from his distributive shares of partnership income for each of the years 1979 through 1981, and has offered only a meritless constitutional argument as explanation for that failure. We find that he has failed to carry his burden of proof on this issue, and the additions to tax are sustained. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The filing of a Form 1040 fully reporting income starts the running of the period of limitation for assessment of the self-employment tax even where, as in this case, the return reports no self-employment tax liability. Rev. Ruling 82-185, 1982-2 C.B. 396↩.
3. See Oller v. Commissioner,T.C. Memo. 1981-124↩.