CLAUDE E. BRADDOCK AND MICHELLEN BRADDOCK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19733-88.　　　Filed December 26, 1990.

Claude E. and Michellen Braddock, pro se.
*Clement Shugarman,* for the respondent.

OPINION

DAWSON, *Judge:* This case was assigned to Special Trial Judge Helen A. Buckley pursuant to the provisions of section 7443A(b)[1] and Rule 180 et seq.[2] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

---

[1]All section references are to the Internal Revenue Code as amended and in effect for the year in issue unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]This case came before the Court as a "small tax case" pursuant to sec. 7463. However, the amount in issue exceeds the $10,000 limit for small tax cases, and the case was redesignated as a regular tax case.

## OPINION OF THE SPECIAL TRIAL JUDGE

BUCKLEY, *Special Trial Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the year 1984 in the amount of $9,988.40 together with the following additions to tax:

| Sec. 6651(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
|---|---|---|---|
| $427.37 | $712.02 | [1] | $2,497.10 |

[1] 50 percent of the interest due on the deficiency.

After concessions by both parties, the issues remaining for decision are: (1) Whether petitioner underpaid his self-employment taxes imposed by sections 1401 et seq., and (2) whether petitioners are liable for additions to tax under section 6651(a)(1) for failure to file a timely return, section 6653(a)(1) and (2) for negligent or intentional disregard of rules and regulations, and section 6661 for substantial understatement of income tax.

Petitioners have conceded respondent's determination insofar as it reflects deficiencies in and additions to tax attributable to an underpayment of section 1 tax (normal income tax). They contest only the amount of deficiency in and additions to tax attributable to the determined underpayment of self-employment tax under section 1401.

Some of the facts were stipulated and are so found. Petitioners filed a joint Federal income tax return for the year 1984 and resided in Washington, D.C., at the time they filed their petition herein. Hereafter, reference to petitioner in the singular denotes Claude E. Braddock.

During 1984, the International Telecommunications Satellite Organization (hereafter Intelsat) employed petitioner, a U.S. citizen, in the United States as a reprographic specialist. Intelsat is an international organization as defined in section 7701(a). It enjoys the privileges, exemptions, and immunities provided in the International Organization Immunities Act, codified at 22 U.S.C. sections 288 (1988) et seq. By reason of the provisions of sections 3101, 3111, and 3121(b)(15), Intelsat and its employees are not subject to Social Security taxes imposed by the Federal Insurance Contributions Act (FICA). In addition, Intelsat is not required to comply with Federal, State, or local tax withholding requirements. In order to place its U.S. citizen

employees on a parity with its noncitizen employees, Intelsat recompenses its U.S. citizen employees for their Federal, State, and local income taxes, and Social Security tax obligations.

Petitioner received various forms of remuneration from Intelsat in 1984, including a base salary, a dependency allowance, a transportation allowance, and overtime. In addition, Intelsat paid petitioner's 1984 estimated, and prior year's settlement of, Federal and District of Columbia income taxes. It also paid his 1984 estimated, and prior year's settlement of, self-employment taxes. The total amount paid to or on behalf of petitioner by Intelsat in 1984 was $41,306.23. The breakdown is as follows:

| | |
|---|---|
| Base salary | $13,000.44 |
| Dependency allowance | 3,050.00 |
| Transportation allowance | 600.00 |
| Overtime | 3,401.63 |
| 1984 estimated Federal and D.C. income taxes | 8,552.00 |
| 1984 estimated self-employment taxes | 1,548.00 |
| 1983 Federal and D.C. income tax settlements | 10,119.00 |
| 1983 self-employment tax settlement | 1,035.16 |
| Total | 41,306.23 |

The dependency allowance paid to petitioner was an additional amount of compensation for services to assist him in meeting the costs of raising each of his children. Similarly, the transportation allowance was additional compensation to assist in paying petitioner's cost of commuting to and from work.

On Schedule SE of petitioner's 1984 Federal income tax return he reported $15,227 of income subject to the self-employment tax. By notice of deficiency dated July 8, 1988, respondent determined that the entire remuneration of $41,306.23 received in 1984 was taxable self-employment income.

This issue is one of first impression. Petitioner's contention is that the recompense for taxes does not relate to his earnings from self-employment and must be excluded in determining the base for the tax. Respondent, on the other hand, contends that all compensation received results from petitioner's services for Intelsat and, as such, must be included as earnings from self-employment.

It is well established, and petitioner now concedes, that each of the items of his remuneration, including Intelsat's payment of his income taxes, represents gross income under section 61 and is subject to the normal income tax imposed by chapter 1. *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716 (1929). Respondent argues that the same criteria apply in ascertaining what portion is includable in self-employment income taxable under section 1401.

The Code includes within the ambit of "self-employment" the services provided by employees to international organizations. Sec. 1402(b) and (c); *Smart v. United States*, 222 F. Supp. 65 (S.D.N.Y. 1963), affd. 332 F.2d 283 (2d Cir. 1964). Section 1402(a) defines "net earnings from self-employment" as "gross income derived by an individual from any *trade or business* carried on by such individual, less the deductions allowed by this subtitle." (Emphasis supplied.)

Section 1402(c) defines "trade or business" and provides that such term does not include "(2) the performance of service by an individual as an employee, other than * * * (C) service described in section 3121(b)(11), (12), or (15) performed in the United States * * * by a citizen of the United States." Described in section 3121(b)(15) is service performed in the employ of an international organization such as Intelsat. Accordingly, by virtue of section 1402(c)(2)(C), petitioner's service as an Intelsat employee is included in the "trade or business" definition and his earnings therefrom constitute net earnings from self-employment taxable under section 1401. Still, there remains the question of which items of compensation make up "net earnings from self-employment."

Respondent has considered this question and has issued two rulings holding that for employees regarded as self-employed under sections 1401 et seq., employer payments of the employees' tax liabilities are includable in self-employment income. Rev. Rul. 84-122, 1984-2 C.B. 184 (income tax reimbursements received by a U.S. citizen employed in the United States by an international organization are subject to self-employment taxes in the year received); and Rev. Rul. 68-507, 1968-2 C.B. 485 (amounts paid by a church toward its minister's obligation for income tax or self-employment tax is includable in income for the

minister's self-employment tax liability). These rulings simply present respondent's view of the matter, and we are not bound by the position he has taken therein. *Newberry v. Commissioner,* 76 T.C. 441, 445 (1981); *Lemery v. Commissioner,* 54 T.C. 480, 489 (1970).

We are convinced that Congress intended for the term "wages" to be synonymous with "net earnings from self-employment" in cases such as that at bar. We reviewed the legislative history of the self-employment tax in *Hornaday v. Commissioner,* 81 T.C. 830 (1983). The tax was added to the Code by the Social Security Amendments Act of 1950, ch. 809, 64 Stat. 477. Its purpose was to extend Social Security coverage to self-employed individuals who previously did not pay the tax and were not covered. *Hornaday v. Commissioner, supra* at 833-834, citing S. Rept. 1669, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 302, 306, 352-353. As we observed in *Hornaday v. Commissioner, supra,* the self-employment tax is the counterpart of the taxes imposed upon the wages of employees by FICA.

In *Smart v. United States, supra,* the taxpayer, an employee of an international organization (the United Nations), raised a constitutional challenge to section 106(b) of the Social Security Amendments Act of 1960. This enactment amended the self-employment tax provisions to include employees of international organizations within the category "self-employed." The taxpayer contended that the section violated due process because it arbitrarily and unreasonably included her as a self-employed individual when in actuality she was an employee. The District Court rejected the argument and, in so doing, provided insight into the legislative history of the act which we find particularly apposite here.

Drawing from the House committee report on the bill,[3] the District Court in *Smart* observed that the act's purpose was "to extend 'Social Security' coverage to United States citizens working for international organizations." 222 F. Supp. at 67. Since the United States could not impose the employer share of FICA tax on international organizations, the inclusion of employees of international organizations in the category "self-employed" was the most effective means

---

[3]H. Rept. 1799, 86th Cong., 2d Sess. (1960), 1960-2 C.B. 763.

the committee could find to resolve the problem of their noncoverage. *Smart v. United States, supra* at 67. The Court then commented:

Basically, coverage under Social Security is provided employed persons under the categories of "employees" or "self-employed." Where there is an employer to pay the tax Congress has seen fit to impose the tax equally upon the employer and employee, but where as in the case of the self-employed, there is no employer who can be taxed, a tax is imposed entirely upon the self-employed. Since an international organization cannot be taxed, the employee of such organization is in the same category as the self-employed, there being no employer to levy on. * * * [222 F. Supp. at 67-68.]

It is our view that Congress, via the passage of this bill, intended that individuals in the position of petitioner to be covered by Social Security to the same extent as employees covered through the payment of FICA taxes. That being the case, it follows that the amount of remuneration upon which the Social Security tax is to be levied was intended to be the same for both; the only difference being that upon one, the FICA rate is imposed and upon the other, there being no employer available to tax, the self-employment rate is imposed. We find no reason to believe that Congress intended to otherwise differentiate between the two.

Moreover, this Court has said that when examining whether compensation is includable in self-employment income under sections 1401 et seq., such provisions are to be broadly construed to favor coverage for Social Security purposes. *Hornaday v. Commissioner, supra*, and cases cited therein.

Construing sections 1401 et seq. in pari materia with sections 3101 et seq., we conclude that an employee who falls within the category of "self-employed" has "net earnings from self-employment" equal in amount to the "wages" he would be taxed upon were he an employee for FICA purposes. Thus, the entire amount of petitioner's 1984 compensation from Intelsat, totaling $41,306.23, is self-employment income subject to the section 1401 tax.[4]

---

[4]Because of our conclusion we do not find it necessary to consider respondent's argument that since sec. 1402(d) provides that the term "wages" for purposes of the self-employment tax has the same meaning as used in FICA (secs. 3101 et seq.), petitioner's "wages," as they would be constituted for FICA tax purposes, are by statute his "net earnings from self-employment."

Next we turn to the question whether petitioners are liable for additions to tax determined by respondent under the provisions of sections 6651(a)(1), 6653(a)(1) and (2), and 6661. First, we note that petitioners, who substantially underreported their gross income from Intelsat for income tax purposes, have conceded each of the additions to tax insofar as it relates to their conceded unreported income. This fact, in and of itself, removes from our consideration the imposition of the additions to the self-employment tax portion of the deficiency in regard to section 6651(a)(1) and 6653(a)(1). We think petitioners have conceded that they did not file their return in a timely manner so that the addition under section 6651(a)(1) applies to the entire deficiency. Further, under the provisions of section 6653(a)(1), if any portion of the underpayment is due to negligence, the addition applies to the entire underpayment. Thus, we consider that petitioners have conceded this issue.

A different rule applies, however, to the addition added under the provision of section 6653(a)(2). That addition applies only to the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Petitioners have conceded their liability for the underpayment attributable to their underreporting of gross income. Accordingly, we consider only whether their failure to include all their remuneration as net earnings from self-employment is attributable to negligence. We have considered the fact that petitioners' income tax return was prepared by someone who claimed to be knowledgeable in the preparation of returns for employees of international organizations and that they relied upon his advice. Further, as we have previously noted, this issue has never before, as far as we can ascertain, been considered by any court, and the answer is not entirely clear from the statutory language. Accordingly, we hold that the addition under section 6653(a)(2) is not applicable to that portion of the underpayment which relates to the computation of tax on petitioner's net earnings from self-employment.

Finally, we turn to the addition under section 6661, which applies where there is a substantial understatement of income tax. Petitioners have conceded the applicability of the addition insofar as it relates to their underreporting of

gross income. They are entitled to a reduction in this addition if the facts affecting the item are adequately disclosed in the return or in a statement attached to the return, or if they can show the existence of substantial authority supporting their treatment of self-employment income. Sec. 6661(b)(2)(B). Section 1.6661-4, Income Tax Regs., specifies the types of adequate disclosure, and section 1.6661-3(b)(2), Income Tax Regs., sets forth the types of authority that may be relied upon by the taxpayer. Here petitioners failed to make an adequate disclosure of the item and have not shown substantial authority for their treatment of the item. Accordingly, we sustain respondent's determination with respect to the addition to tax under section 6661.

To reflect the foregoing and concessions,

*Decision will be entered under Rule 155.*